# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

**FILED**
APR 2 5 2008

CLERK

J.D. Evans, Inc., )
A South Dakota Corporation, )
)
      Plaintiff, )
)    Case No. 08-4059
vs. )
)
**Volvo Group North America, Inc.** )
a Delaware Corporation )
)
Serve: CT Corporation System )
319 South Coteau Street )
Pierre , SD 57501-3187 )
)
**Volvo Construction Equipment** )
**North America, Inc.**, a Delaware Co. )
)
Serve: CT Corporation System )    **COMPLAINT**
225 Hillsborough Street )
Raleigh, NC 27603. )
)    **JURY TRIAL DEMANDED**
**Volvo Road Machinery, Inc.** )
A North Carolina Corporation, )
)
Serve: Corporation Service Company )
327 Hillsborough Street )
Raleigh, North Carolina 27603 )
)
**Ingersoll-Rand Company** )
a New Jersey Corporation )
)
Serve: CT Corporation System )
319 S. Coteau St. )
Pierre, South Dakota 57501-3108. )
)
      Defendants. )

# COMPLAINT

COMES NOW Plaintiff, J.D. Evans, Inc., by and through the undersigned counsel and for its Complaint against the defendants.  In support thereof Plaintiff hereby states and alleges as follows:

## PARTIES AND PERSONAL JURISDICTION

### Plaintiff J.D. Evans, Inc.

1.      Plaintiff J.D. Evans, Inc., (hereinafter "Evans") is a corporation duly organized and existing under the laws of the State of South Dakota and has its principle place of business at 4000 N.  Cliff, Sioux Falls, Minnehaha County, South Dakota, 57104. At all material times Evans was and is a construction and industrial equipment dealership selling equipment and parts to local contractors, farmers, governmental agencies and businessmen, and providing service for such equipment.

### Background Regarding Volvo AB

2.      Volvo AB is a global manufacturing company organized under the laws of Sweden with its worldwide headquarters are at 40508 Goteborg, Belgium, Sweden V7. Volvo AB owns and controls either directly or through wholly owned and controlled subsidiaries all Volvo subsidiaries named as defendants herein.

### Defendant Volvo Group North America, Inc.

3.      Defendant Volvo Group North America, Inc., is a Delaware Corporation (incorporated 1-9-2006), which  applied for permission to conduct business in South Dakota and has been

2

issued a Certificate of Authority by the South Dakota Secretary of State (12-19-2007).

Defendant Volvo Group North America, Inc., is wholly owned and controlled by Volvo AB.

Upon information and belief Volvo Group North America, Inc., owns and controls all of

Volvo AB's North American subsidiaries including defendants Volvo Construction

Equipment North America, Inc., and Volvo Road Machinery, Inc. The Registered Agent for

service of process in South Dakota for Defendant Volvo Group North America, Inc., is CT

Corporation System, 319 South Coteau Street Pierre , SD 57501-3187.

4.      Volvo Group North America, Inc., has and continues to conduct continuous business

activities in South Dakota through some of the above named and other non-named

subsidiaries substantial enough for this Court to exercise general jurisdiction over the

corporate person of Volvo Group North America, Inc.

5.      Volvo Group North America, Inc., satisfies the long-arm jurisdiction requirements of

SDCL §15-7-2 in that Volvo Group North America, Inc., has: (1) transacted business in

South Dakota including selling industrial and construction equipment and providing for the

financing and insurance thereof, (2) held an interest in property situated within this state

including industrial and construction equipment; (3) entered contracts for services to be

rendered or for materials to be furnished in South Dakota, including industrial and

construction equipment; (4) entered into negotiations with persons in South Dakota with the

apparent objective of contracting for services to be rendered or materials to be furnished in

this state, including establishing industrial and construction equipment dealers; (5)

3

commenced and participated in negotiations involving subject matter located in whole or in part within South Dakota including construction and industrial equipment dealer agreements.

### Volvo Construction Equipment North America Inc.

6.      Volvo Construction Equipment North America, Inc., is a Delaware Corporation formed in 1984 with its principal place of business at One Volvo Drive, Asheville, North Carolina 28803. At all times material to the following allegations giving rise to Plaintiff's claims herein, Volvo Construction Equipment North America, Inc., acted through its officers, employees and agents including, but not limited to, Dennis R. Slagle (President), Muriel Huyghebaert (C.F.O.), Martha P. Boyd (Vice President), Tim Frank (Vice President Strategy and Marketing), Chip Young (Channel Development Manager), and Shawn Sweet (Vice President Managed Distribution). The registered agent of Volvo Construction Equipment North America, Inc., where it may be served with process is CT Corporation System, 225 Hillsborough Street, Raleigh, NC 27603.

7.      Volvo Construction Equipment North America, Inc., has and continues to conduct continuous business activities in South Dakota through some of the above named officers, agents and employees substantial enough for this Court to exercise general jurisdiction over the corporate person of Volvo Construction Equipment North America, Inc.

8.      Volvo Construction Equipment North America, Inc., satisfies the long-arm jurisdiction requirements of SDCL §15-7-2 in that Volvo Construction Equipment North America, Inc., has: (1) transacted business in South Dakota including selling industrial and

4

construction equipment and providing for the financing and insurance thereof, (2) held an interest in property situated within this state including industrial and construction equipment; (3) entered contracts for services to be rendered or for materials to be furnished in South Dakota, including industrial and construction equipment; (4) entered into negotiations with persons in South Dakota with the apparent objective of contracting for services to be rendered or materials to be furnished in this state, including establishing industrial and construction equipment dealers; (5) commenced and participated in negotiations involving subject matter located in whole or in part within South Dakota including construction and industrial equipment dealer agreements.

### Defendant Volvo Road Machinery, Inc.

9.      Champion Road Machinery, Inc., was incorporated in North Carolina on 8-30-1993, to continue building motor graders. In 1997 Volvo Construction Equipment acquired Champion Road Machinery. On 12-18-2000 the name was changed from Champion Road Machinery, Inc., to Volvo Motor Graders, Inc. On April 20, 2007, the name was changed again to Volvo Road Machinery, Inc., and on April 26, 2007 it was converted to a Delaware Corporation. The principal place of business is One Volvo Drive, Asheville, North Carolina 28803. It may be served at Corporation Service Company, Inc., 327 Hillsborough Street, Raleigh, NC 27603.

10.     Volvo Road Machinery, Inc., has and continues to conduct continuous business activities in South Dakota through some of the above named and other non-named

5

subsidiaries substantial enough for this Court to exercise general jurisdiction over the corporate person of Volvo Group North America, Inc. Volvo Road Machinery, Inc., conducts business in South Dakota under the Certificate of Authority issues to Volvo Group North America, Inc.

11.     Volvo Road Machinery, Inc., satisfies the long-arm jurisdiction requirements of SDCL §15-7-2 in that Volvo Road Machinery, Inc., has: (1) transacted business in South Dakota including selling industrial and construction equipment and providing for the financing and insurance thereof, (2) held an interest in property situated within this state including industrial and construction equipment; (3) entered contracts for services to be rendered or for materials to be furnished in South Dakota, including industrial and construction equipment; (4) entered into negotiations with persons in South Dakota with the apparent objective of contracting for services to be rendered or materials to be furnished in this state, including establishing industrial and construction equipment dealers; (5) commenced and participated in negotiations involving subject matter located in whole or in part within South Dakota including construction and industrial equipment dealer agreements.

12.     At all times material to the allegations in is Complaint all the above named Volvo defendants acted as the agents for one another. They shared common employees, directors, officers and/or agents. The knowledge of each Volvo defendant is imputed to each other defendant and each defendant is liable for the actions of the other Volvo defendants under principles of agency, *respondeat superior*, joint and several liability or other applicable law.

6

The above named Volvo defendants are collectively referred to as "Volvo" in this Complaint.

### Defendant Ingersoll-Rand Company

13.     Ingersoll-Rand Company ("IR") is a New Jersey Corporation which applied for and was granted a Certificate of Authority to transact business in South Dakota. IR manufactures and sells various construction and industrial equipment through dealers like Evans. IR appointed Evans as a dealer in 1997. IR may be served with process at C. T. Corporation System, 319 S. Coteau St. Pierre , South Dakota 57501-3108.

### SUBJECT MATTER JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332 (a)(1) because this action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(1), (2) and (c) because a substantial part of the acts, errors and omissions giving rise to these claims occurred in this District, and at all times mentioned herein defendants were doing business in this district.

16.     This forum is the most convenient because most the witnesses and evidence are located in this District, all the defendants did or should have expected that any dispute over the termination of Evan's dealer franchise would be litigated in this District, the defendants purposefully entered South Dakota with the expectation of transacting business within this state, Evans' injuries arise out of or relate to defendants' contact with South Dakota. Further, this Court is best situated to interpret and apply South Dakota law which controls this action.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

### Formation of Evans' Dealer Franchise

17.     On March 1, 1995, in pursuit of its business and pecuniary interest, Ingersoll-Rand established Evans as a dealer for IR air compressor and compaction products for South Dakota. As part of the dealer franchise relationship IR required Evans to execute a Distributor Selling Agreement prepared by IR's attorneys.

18.     In reliance upon the dealer franchise relationship, Evans immediately invested heavily in marketing IR products, established and stocked inventory of both parts and equipment, trained its sales force, associated its good will with IR products and in all other ways used its best efforts to sell and service IR equipment.

19.     Evans performed all its responsibilities as a dealer. IR never complained about Evans' fulfillment of its dealer franchise responsibilities. No termination threat was ever made. No breach was ever alleged.

### Volvo's Acquisition of Ingersoll-rand's Road Development Business

20.     On February 27, 2007, Volvo and IR executed an "Asset and Stock Purchase Agreement" and announced that Volvo had agreed to acquire IR's Road Machinery business for $1.303 Billion cash (hereinafter the "Acquisition").

21.     The Acquisition included all the manufacturing, design, marketing, financing, sales and other items needed to manufacture, market, sell and support the Ingersoll-Rand Road Machinery compaction products that Evans' sold as part of its IR dealer franchise. The

8

Acquisition did not include the Ingersoll-Rand air compressor products Evans sold.

22.   After the Acquisition IR stopped and indeed was incapable of accepting Road Machinery product orders. Only Volvo was capable of accepting and filling Road Machinery product orders.

23.   As part of the Acquisition Volvo purchased all of the facilities, tools, equipment, machinery, computers, designs and other industrial assets necessary to design, build, manufacture, market, sell and support IR Road Machinery products.

24.   Volvo assumed all of IR's obligations that went along with the Road Machinery business including: (A) honor dealer purchase orders, (B) sell Road Machinery equipment to dealers at discounted prices, (C) repurchase and/or refund dealer returns of IR Road Machinery products, (D) perform warranty obligations, (E) perform  sales and service training, (F) extend service technical support to dealers, and (G) compensate dealers for defective equipment and damages caused thereby.

25.   Volvo specifically assumed responsibility for all claims arising from IR Distributor Selling Agreements that relate to Road Machinery products which accrued after the Closing Date. Evans' termination claim arose after the Closing Date.

26.   The plan and agreement of Volvo and IR was for Volvo to "take over" management of the dealer franchises such that if Volvo did anything to expose IR to liability, then Volvo "will reimburse, indemnify and hold harmless the Sellers and their Affiliates against any Losses incurred by any IR Indemnified Persons that relate to the Business and that result

9

from any claim by the counterparty to any Shared Sales & Service Agreement to the extent such claim arises out of the sale of the Business to the Buyers or any termination or deemed termination of any Shared Sales & Service Agreement arising out of the sale of the Business to the Buyers or the separation of Business products from the Shared Sales & Service Agreements as described above."

27.     Volvo  was to and is acting in place of IR with regard to the manufacturing, supply, marketing, sale and delivery of Road Machinery products. Volvo likewise assumed the IR dealer network for Road Machinery products.

28.     Volvo exerted control over the IR dealership contracts and treated the contracts as acquired assets. For example, Volvo, not IR, told Evans that IR will no longer honor the Road Machinery portion of Evan's franchise but that "IR will continue to honor the portion of your existing IR Distributor Selling Agreement that covers non-Road Machinery products."

29.     Volvo assumed the responsibility for being fair in negotiations with dealers when attempting to coax dealers into signing Volvo dealer agreements instead of keeping the IR dealer agreements.

30.     Volvo assumed the responsibility for returns and buy-back of IR parts and equipment, and performed the requirements contained in existing IR dealer agreements with respect to such returns and buy-backs.

31.     Volvo assumed the collection and receipt of payment due under the IR dealer

agreements for IR Road Machinery parts and equipment.

32.     Volvo was required to make a "bona fide written offer to [each dealer] to enter into a new dealer or distributor Contract relating to the distribution of products of the Business, on commercially reasonable terms."

33.     Volvo was empowered to and did direct IR to "take action. . .to remove the products of the Business from the scope of the Shared Sales & Service Agreement."

34.     After Closing Volvo President and CEO Dennis Slagle told Evans that "It is with great pleasure that we welcome you to Volvo Road Machinery, Inc. * * * the new additions to our dealer network are diverse, with both independent IR and IR owned dealers actively selling different combinations of IR products acquired by Volvo. Our immediate goal is to ensure an uninterrupted supply of machinery and support for current customers and future IR road customers - that focus will not be interrupted and we hope to have your continued support to get this done. *** We look forward to working with you to continue to support our mutual customers."

## The Plan for Dealer Franchise Consolidation

35.     As a large construction equipment manufacturer, Volvo already had a dealer network for its construction equipment products. Specifically, RDO Equipment Company already sold the asphalt paver line Volvo had acquired from Ingersoll-Rand several years before the Acquisition.

36.     Volvo's post-Acquisition sales and marketing plan was to consolidate dealers by

11

terminating the IR dealers who served the same territory as existing Volvo dealers. Volvo invented a decision matrix as part of its plan to consolidate dealers.

37.    Volvo directed and decided that the Road Machinery products sold by Evans should and would now be sold by RDO Equipment Company instead. RDO Equipment was the current dealer for IR asphalt paving equipment (which Volvo had purchased several years earlier).

<u>**Knowledge of South Dakota's Dealer Protection Act**</u>

38.    IR and Volvo knew that every one of the United States had some form of State Dealer Protection law.

39.    IR and Volvo knew about South Dakota's prohibitions against dealer franchise termination and that terminating a dealer without just provocation and without first considering the equities of the dealer was illegal (a crime) and actionable.

40.    IR and Volvo knew that the without-cause termination provisions in Evans' IR Dealer Agreement were void and were not an excuse or defense to termination.

41.    IR and Volvo knew that the 12-31-07 expiration date in Evan's IR Dealer Agreement was void and not an excuse or defense to termination.

42.    IR knew that the value of its Road Development business was built on the backs of dealers like Evans, that transferring its Road Development manufacturing capabilities to Volvo without allocating any of the $3,030,000,000.00 IR received for that business was inequitable.

12

## The Plan to Obtain Releases from Wrongful Terminations

43.     IR and Volvo expected that some terminated dealers would sue over the terminations.

44.     IR and Volvo devised and agreed to a plan whereby Volvo would notify dealers about Volvo's acquisition of IR Road Machinery products and attempt to persuade dealers to release IR from liability for the terminations. The plan included Volvo presenting a new dealer agreement that would coax dealers into voluntarily terminating their IR Road Machinery franchises.

45.     Volvo expressly or impliedly agreed to assume IR's obligations to its dealers.

46.     Volvo acted as IR's agent in communicating the events surrounding the Acquisition to IR dealers. IR knew about the communications and approved of the form, method and content of the communications.

47.     The Acquisition agreement required Volvo to negotiate terms and terminations with IR's dealers. Volvo officers and employees communicated personally with IR dealers including Evans and attempted to negotiate terms, including a release of IR liability.

48.     IR and Volvo expected that at least some dealers would sue over the terminations.

49.     Because Volvo would be in control of the Road Development franchises, it and IR agreed that Volvo will reimburse, indemnify and hold IR harmless against any losses incurred by IR as a result of any claim over any termination or deemed termination of any Road Machinery dealer agreement.

13

## Volvo's Effort to Coerce Evans into Releasing IR and
## Termination of Evans Dealer Franchise for Road Machinery Products

50.     On April 10-17, 2007, Volvo conducted internal meetings where it refined its plan to

obtain releases for IR while still consolidating dealers. Upon information and belief, Volvo

attorneys advised Volvo about the legality of terminating dealer franchises including South

Dakota law.

51.     On April 16, 2007, Volvo sent Evans and all other IR Road Machinery dealers a

Volvo Dealer Agreement which Volvo asked dealers to sign in anticipation of the April 30,

2007, closing of the Acquisition. Volvo indicated that the Volvo Dealer Agreement took into

account "applicable state law" and was "not subject to change on a dealer-by-dealer basis."

52.     Unlike any of the IR Distributor Selling Agreements, the Volvo Dealer Agreement

contained an arbitration clause which made specific reference to abiding by the Federal

Arbitration Act.

53.     On April 27, 2007, Evans wrote Volvo and advised that the proposed agreement

"violates in our view several South Dakota Dealer Protection laws" and reminded Volvo of

what happened when Volvo terminated Evan's Champion motor grader franchise in 1998.

54.     In 1997 Volvo purchased the assets of Champion motor graders. Evans was the

Champion dealer. Volvo wanted to consolidate the Champion franchises with existing Volvo

franchises so Volvo terminated Evans' Champion franchise in 1998. Volvo re-branded the

motor graders. Evans made a claim against Volvo which settled for a significant amount.

55.     On April 30, 2007, the Acquisition closed and Volvo paid IR $1.303 Billion cash. As

14

a result Volvo became the successor to IR's Road Machinery business which included compaction equipment and dealers.

56.     On May 9, 2007, Volvo President and CEO Dennis Slagle met with the Road Distributor Advisory Council and said Volvo's goal is to have one dealer per territory.

57.     Volvo invented a matrix to gauge dealer consolidation priorities, i.e. which dealers would be terminated first, and gave it to the Council.

58.     The two factors considered by Volvo were the strength of the existing Volvo dealer and the degree of conflict the IR dealer had with Volvo General Purpose Production Equipment (e.g. selling competing lines like Komatsu).

59.     The performance and equities of the IR dealers were not a factor, nor were their investments in the franchise. Mr. Slagel emphasized that the IR products would be re-branded Volvo yellow and gray.

60.     On May 17, 2007, Volvo called Evans' asking why Evans had not signed the Volvo Dealer Agreement. Evans reiterated the concerns expressed in its April 27, 2007, letter, and explained how the Volvo Dealer Agreement violated South Dakota law in numerous ways. Evans stated its concern that Volvo will want to do the same thing with IR Road Machinery that Volvo did with Champion motor graders – place all re-branded products with an existing Volvo dealer – and that signing the Volvo Dealer Agreement would not stop Evans' termination. Volvo promised a response promptly.

61.     On October 2, 2007, Evans wrote Volvo asking about the status of the proposals

15

Young had promised on May 17, 2007, and advised the delay was wasting a construction season of sales.

62.     On November 19, 2007, Evans called Volvo and repeated the request for a status update. Volvo again promised to consult its legal department and get back to Evans. That afternoon Volvo called back and said Volvo wanted to keep Evans as the IR Road Machinery dealer but only if Evans signed Volvo's proposed Dealer Agreement, including the arbitration clause.

63.     Numerous IR Road Machinery dealers were terminated as part of the dealer consolidation plan.

64.     On November 26, 2007, Volvo wrote Evans and enclosed the same Volvo Dealer Agreement ("Volvo Dealer Agreement") insisting that Evans sign it. Volvo promised it would "abide by all statutory and contractual requirements" and so Evans need not worry about all the illegalities and inaccuracies in the Volvo Dealer Agreement.

65.     Volvo knew its proposed Dealer Agreement contained an arbitration clause which preempted South Dakota's Dealer Protection Act. Volvo expected that if Evans signed the Volvo Dealer Agreement, any claim Evans might make for wrongful termination under South Dakota's Dealer Protection Act would have to be resolved by arbitration in Volvo's home state of North Carolina and not before a jury in South Dakota as is provided in the SDDPA.

66.     On November 29, 2007, Evans wrote Volvo and again listed some of the inconsistencies between the Volvo Dealer Agreement and the SDDPA. Evans specifically

16

complained about the arbitration clause. Evans also reminded Volvo that this process had been explained before when Volvo unilaterally terminated Evan's Champion motor grader franchise.

67.    On December 4, 2007, Volvo wrote Evans and urged Evans to sign the Volvo Dealer Agreement even though it violated South Dakota law because "Volvo will abide by applicable statutory requirements." Volvo threatened that unless Evans signed the illegal Dealer Agreement by December 14, 2007, "Volvo will not accept an orders for new compaction products and endeavor to find acceptable dealer representation" and "Volvo will not accept stock parts orders from J.D. Evans, Inc."

68.    Volvo did not disclose its understanding that the arbitration clause in the Volvo Dealer Agreement trumped the SDDPA such that the promise of a jury trial in SDCL 37-5-12 was not an "applicable statutory requirement." Volvo had a duty to disclose this because Volvo was attempting to make Evans think that all of the SDDPA would be abided by and not just some of it.

69.    On December 10, 2007, Evans complained about termination of the franchise and threatened legal action if Volvo refused to consider the equities of compensating Evans for the termination.

70.    On December 27, 2007, Mr. Young wrote Evans and advised that "This letter is to notify you that your failure to execute the dealer agreements offered by Volvo Road Machinery, Inc, on April 30, 2007, and again on December 4, 2007, has forced us to abandon

our efforts to define our business relationship. We would be willing to discuss the repurchase of any new Volvo/Ingersoll Rand Road Development inventory to include whole goods, parts and attachments."

71.     On January 24 and 25, 2008, Evans' parts department provided a list of Volvo / IR Road Machinery items to return.

72.     On February 4, 2008, Volvo wrote Evans saying that Volvo would accept return of the unsold IR parts in compliance with the IR Distributor Selling Agreement and added "Your decision not to execute the standard dealer agreement offered by Volvo Road Machinery, Inc., on April 30, 2007 and again on December 4, 2007, forced us to abandon our efforts to define our business relationship."

73.     Evans attempted to place Road Machinery parts and/or equipment orders but was told by Volvo representatives who responded that Evans' orders would not be accepted and that Evans would have to order parts and equipment through RDO Equipment Company. IR knew about, joined in, consented to and ratified the refusal to sell to Evans.

## COUNT I

### UNFAIR CANCELLATION UNDER S.D.C.L. §37-5-3

**COMES NOW** Plaintiff Evans for Count One of its Complaint against defendants Volvo and IR for violation of S.D.C.L. §37-5-3. In support of said Count, Evans states and alleges to the Court as follows:

74.     Evans hereby incorporates by reference as though fully set forth herein, all allegations

contained in all paragraphs preceding this paragraph.

75.     Defendants unfairly cancelled Evan's dealer franchise for Road Machinery products.

76.     Defendants did not give due regard for the equities of Evans when they terminated Evans' dealer franchise.

77.     Defendants did not have just provocation to cancel Evans' dealer franchise.

78.     As a direct and proximate result of the above described wrongful and illegal conduct of Defendants, Evans has been injured and damaged, and will continue to be injured and damaged as alleged in the Prayer for Relief which is incorporated herein.

**COUNT II**

**CIVIL CONSPIRACY**

**COMES NOW** Plaintiff Evans for Count II of its Complaint against defendants Volvo and IR for Civil Conspiracy. In support of said Count, Evans states and alleges to the Court as follows:

79.     Evans hereby incorporates by reference as though fully set forth herein, all allegations contained in all paragraphs preceding this paragraph.

80.     Defendants agreed to, and had a meeting of the minds about, disregarding South Dakota Dealer Protection laws when Defendants decided to terminate Evans' IR Road Machinery dealer franchise and "consolidate" it with Volvo's asphalt paver dealer franchise held by RDO Equipment.

81.     The object of the conspiracy was to terminate Evans and place the compaction

equipment franchise with one of Volvo's other dealers.

82.    The termination of Evans in violation of SDCL 37-5-3 is an unlawful overt acts.

83.    As a direct and proximate result of the above described wrongful and illegal conduct of Defendants, Evans has been injured and damaged, and will continue to be injured and damaged as alleged in the Prayer for Relief which is incorporated herein.

## COUNT III

## <u>TORTIOUS INTERFERENCE BY VOLVO</u>

**COMES NOW** Plaintiff Evans for Count III of its Complaint against defendant Volvo and pleading in the alternative states and alleges to the Court as follows:

84.    Evans hereby incorporates by reference as though fully set forth herein, all allegations contained in all paragraphs preceding this paragraph.

85    Evans had a valid business relationship or expectancy with IR regarding the continuation of Evans' IR Road Machinery dealer franchise.

86.    Volvo knew about Evans' aforesaid relationship or expectancy.

87.    Volvo intentionally and unjustifiably interfered with that expectancy.

88.    The interference caused the harm sustained as stated in the Prayer for Relief.

89.    As a direct and proximate result of the above described interference, Evans has been injured and damaged, and will continue to be injured and damaged as alleged in the Prayer for Relief which is incorporated herein.

## COUNT IV

## BREACH OF CONTRACT

**COMES NOW** Plaintiff Evans for Count IV of its Complaint against defendants IR and Volvo and hereby states and alleges to the Court as follows:

90.   Evans hereby incorporates by reference as though fully set forth herein, all allegations contained in all paragraphs preceding this paragraph.

91.   Defendants breached the IR Distributor Selling Agreement entered into with Evans by refusing to sell Evans IR Road Machinery parts and equipment at dealer discount and otherwise terminating that dealer franchise and refusing to do Road Machinery business with Evans.

92.   As a direct and proximate result of the above described interference, Evans has been injured and damaged, and will continue to be injured and damaged as alleged in the Prayer for Relief which is incorporated herein.

## COUNT V

## PUNITIVE DAMAGES

**COMES NOW** Plaintiff Evans for Count V of its Complaint against defendants Volvo and IR states and alleges to the Court as follows:

93.   Evans hereby incorporates by reference as though fully set forth herein, all allegations contained in all paragraphs preceding this paragraph.

94.   All of the statutory violations and other wrongful conduct described above was done maliciously, fraudulently, willfully and intentionally and/or with such reckless disregard and

21

indifference for Evans that exemplary and punitive damages are recoverable herein to punish defendants for their conduct and to deter others from like conduct.

## PRAYER FOR RELIEF

**COMES NOW** Plaintiff Evans for its Prayer for Relief against and from the defendants Volvo and IR. As permitted by law the judgment prayed for should be joint and several. Evans states and alleges to the Court as follows:

95.    Evans hereby incorporates by reference as though fully set forth herein, all allegations contained in all paragraphs preceding this paragraph.

96.    As a direct and proximate result of the above described interference, Evans has been injured and damaged, and will continue to be injured and damaged as alleged in the Prayer for Relief which is incorporated herein.

A.    Evans has suffered and will continue in the future to suffer lost business profits;

B.    Evans has lost good will and reputation in the community and has and will continue in the future to expend funds to try and reclaim some of its good will and reputation;

C.    Evans has lost its investment in training, educating and employing personnel to sell, promote and service Volvo/IR equipment and products and in otherwise preparing its personnel to perform and having them perform Evans's obligations under the Distributor Selling Agreement;

D.    Evans has lost its investment in creating a market for Volvo/ IR parts and

22

equipment in South Dakota and otherwise preparing to promote and promoting Ingersoll-Rand parts and equipment;

     F.     Evans might incur costs and expenses to retrain its personnel to sell other manufacturers' equipment and service other manufacturers' products;

     H.     Evans has lost customers for both Volvo/ IR equipment and products and for other equipment and products;

     I.     Evans has been forced to incur litigation costs, attorney fees, interest expense, expert fees and other costs, expenses and charges related to asserting its rights under South Dakota law.

     J.     Evans requests and demands a jury trial.

**WHEREFORE**, Plaintiff Evans prays for judgment against defendants jointly and severally to the extent permitted by law in an amount exceeding $75,000.00 which will fairly and justly compensate Evans for its damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others from like conduct, for prejudgment interest, for its costs and fees, including attorneys, accountants and expert fees, and for all such other and further relief as is just.

Respectfully submitted,

Michael P. Healy     SDSB 3361
The Healy Law Firm, LLC
1100 Main Street, Suite 2600
Kansas City, MO 64105

23

Phone: 816-472-8800
Fax: 816-472-8803
mphealy@healylawyers.com
ATTORNEY FOR PLAINTIFF

24