UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| J.D. EVANS, INC., a South Dakota corporation, <br><br> Plaintiff, <br><br> vs. <br><br> VOLVO GROUP NORTH AMERICA, INC. a Delaware corporation, <br><br> VOLVO CONSTRUCTION EQUIPMENT NORTH AMERICA, INC., a Delaware corporation, <br><br> VOLVO ROAD MACHINERY, INC., a North Carolina corporation, <br><br> INGERSOLL-RAND COMPANY, a New Jersey corporation, <br><br> Defendants. | CIV. 08-4059 <br><br><br><br><br><br> **Brief in Support of <br> Motion to Transfer Venue** |

Pursuant to 28 U.S.C. § 1404(a), Defendants Volvo Group North America, Inc. ("Volvo Group"), Volvo Construction Equipment North America, Inc. ("Volvo Construction"), and Volvo Road Machinery, Inc. ("Volvo Road") (collectively, "Volvo") submit this brief in support of their motion to transfer venue and would respectfully show the Court as follows:

**I.   BACKGROUND**

   *A.   IR Sells Its Road Machinery Business to AB Volvo.*

The Ingersoll-Rand Company Limited ("IR") was in the business of manufacturing and distributing machinery to build, repair, and maintain concrete and/or asphalt paved roads and surfaces ("road machinery business") throughout the world. In early 2007, AB Volvo, a Swedish

corporation, entered into a definitive agreement to purchase IR's road machinery business. That acquisition closed on April 30, 2007, with Volvo Road Machinery, Inc., a wholly-owned subsidiary of AB Volvo ("Volvo Road"), purchasing IR's road machinery business that was based in the United States.

When this transaction took place, IR also manufactured and distributed other products that were not part of Volvo Road's acquisition of IR's road machinery business. For example, Volvo Road did not purchase IR's power-generation equipment, lighting and air products, certain types of forklifts, or IR's excavating products. A great majority of IR's dealers who distributed the road machinery products also distributed other IR products. Therefore, IR and AB Volvo agreed that no IR distributor's dealer agreement would be assigned to Volvo Road unless that IR distributor's contract is limited to the road machinery products that Volvo Road purchased from IR. J.D. Evans, Inc. ("Evans") is one of the many IR dealers whose contract IR did not assign to Volvo Road.

**B.      *Evans Refused to Sign A New Dealer Agreement with Volvo Road.***

In anticipation of AB Volvo completing its transaction with IR, Volvo Road sent its own dealer agreement to IR's road machinery distributors, with Evans being one of many U.S. distributors to receive such a contract. (A true copy of the dealer agreement Volvo sent to Evans is attached as **Exhibit A**.) Evans refused to sign Volvo Road's dealer agreement.

To date, Volvo Road has not appointed anyone in South Dakota in lieu of Evans. And from April to the end of 2007, Evans never purchased any new road machinery equipment from Volvo Road as other former IR dealers did. Put simply, Volvo Road is without adequate representation in South Dakota due to Evans's refusal to sign Volvo Road's dealer agreement. And because Evans recently returned to Volvo Road what few parts it had in stock, South

Dakotans must go to Volvo Road dealers in adjoining states to acquire new machines and parts or to obtain warranty service.

### C. *Procedural History*

Evans sent a demand letter to Volvo Road that is dated March 14, 2008. In it, Evans notified Volvo Road[1] that it would file suit in the United States District Court for the District of South Dakota on or about April 1, 2008, unless Volvo Road agreed to Evans's settlement demand. (A true but redacted copy of Evans's March 14, 2008, demand letter is attached as **Exhibit B**.) Volvo Road responded to Evans's demand on March 24, 2008. (A true and correct copy of Volvo Road's letter is attached as **Exhibit C**.) Volvo Road advised Evans that, because it repeatedly rejected Volvo Road's contract proposal, Volvo Road had decided against pursuing a proposal with Evans any further.

Volvo Road did not rush off to court once it received Evans's demand. And Evans did not file suit on April 1, 2008. But with Evans's demand letter asserting that Volvo Road is obligated to Evans under contracts to which Volvo Road is neither a party nor an assignee, Volvo Road initiated an action in the United States District Court for the Western District of North Carolina on April 15, 2008, two weeks after Evans's self-imposed deadline for when it would file a lawsuit. (A true and correct copy of the Volvo Road Complaint is attached as **Exhibit D**.) Ten days after Volvo Road filed its action in the Western District of North Carolina, Evans filed the instant lawsuit. Volvo Road's action in North Carolina and Evans's action before this Court involve the same subject matter – whether Evans has a valid, existing, and enforceable contract with Volvo Road.

---

[1] The demand letter identified only Volvo Road as a potential defendant in the threatened lawsuit. None of the other defendants in the instant lawsuit were identified by the demand letter as potential defendants. Moreover, Evans's demand letter enclosed a draft complaint which named only Volvo Road as a defendant.

3

**II.     ARGUMENT AND AUTHORITIES**

   *A.     The First-filed Rule.*

The Eighth Circuit Court of Appeals recognizes and applies the "first-filed rule" as follows:

> The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982), the first-filed rule should apply.

*Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1005 (8th Cir. 1993) (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488-89 (8th Cir. 1990)); *see also Midwest Motor Express, Inc. v. Central States Southeast & Southwest Areas Pension Fund*, 70 F.3d 1014, 1017 (8th Cir. 1995) (stating this rule and citing *Northwest Airlines*); *Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.*, 57 F.3d 638, 641 (8th Cir. 1995) (same). Thus, the "first-filed rule" "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Midwest Motor Express*, 70 F.3d at 1017 (quoting *Northwest Airlines*, 989 F.2d at 1006).

> The "first-filed rule" has the benefit of being a relatively firm rule that, while providing for the exceptional case, avoids in the main the need for ad hoc balancing of innumerable factors on a case-by-case basis [and therefore] is both more predictable for litigants – yielding more speedy, less expensive adjudication – and more easily applied by the courts – preserving scarce judicial resources. These are proper considerations that are consistent with the interests of justice.

4

*Berisford Capital Corp. v. Central States, Southeast & Southwest Areas Pension Fund*, 677 F. Supp. 220 (S.D.N.Y. 1988). Application of the "first-filed rule" is reviewed by the appellate court for abuse of discretion. *Northwest Airlines*, 989 F.2d at 1005; *Goodyear*, 920 F.2d at 489; *Minnesota Mining & Mfg. Co. v. Rynne*, 661 F.2d 722, 724 (8th Cir. 1981) (per curiam).

In this case, the first-filed rule requires transfer to the United States District Court for the Western District of North Carolina because jurisdiction attached first in that case. As previously stated, the North Carolina Action was filed on April 15, 2008, and the instant lawsuit was not filed until April 25, 2008. The subject matter underlying both lawsuits involves the parties' rights and obligations, if any, that may arise under certain contracts that Evans has or had with IR. Moving forward with the instant lawsuit would frustrate judicial economy and open up "a potential for conflicting rulings as two separate courts grapple with the same controversy. This unnecessary and potentially confusing duplication of judicial effort is precisely what the first-filed rule is calculated to avoid. *Goodyear Tire*, 920 F.2d at 488-89.

      **B.**    *None of the Exceptions to the "First-filed Rule" Apply.*

There are exceptions to the "first-filed rule"; however, none of those exceptions apply to this case. In some cases considering whether to allow a second-filed action to proceed, courts have considered an analogy to 28 U.S.C. § 1404(a) to identify factors in a "balance of convenience" to the parties, either before or in addition to considering other special or compelling circumstances in the "first-filed" analysis. *See Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F. Supp. 1334, 1348-50 (N.D. Iowa 1996), *aff'd*, 119 F.3d 688 (8th Cir. 1997), *cert. denied*, 522 U.S. 1029 (1997); *Brower v. Flint Ink Corp.*, 865 F. Supp. 564, 567-68 (N.D. Iowa 1994).

       *1.*      *The Balance of Interests Exception.*

In *Terra*, the district court noted that consideration of such factors was consistent with the directive of the Eighth Circuit Court of Appeals that the first-filed rule "yields to the interests of justice." *Terra Int'l, Inc.*, 922 F. Supp. at 1348. Some of the pertinent factors in a "balance of convenience" analysis include: whether the forum to which transfer is sought is one in which the action "might have been brought," 28 U.S.C. § 1404(a); the balance of convenience of parties and witnesses, noting that a transfer that merely shifts the inconvenience from one party to the other need not be granted; location of documentary evidence; the place in which the conduct complained of occurred; which forum's substantive law applies; the interests of justice; and other relevant factors. *Id.*, 922 F. Supp. at 1358-65.

Here the balance of convenience analysis is essentially flat. It is as easy for Evans's witnesses to travel to North Carolina as it is for Volvo witnesses to travel to South Dakota. Likewise, the location of documentary evidence favors neither South Dakota nor North Carolina. It is difficult to state with any certainty where the conduct which is the subject of the Complaint occurred. If, as Volvo alleges, there is no contract between the parties, then the conduct complained of consists of the interaction between the parties that primarily took place via the United States mail.

While South Dakota law may apply to portions of this case, the deference given to the interpretation of local law by district judges has evaporated. The determination of local law by district judges is now subject to the same de novo standard of review as are any other questions of law. *Salve Regina College v. Russell*, 499 U.S. 225, 231-32, 111 S. Ct. 1217, 1221 (1991). Because the balance of convenience analysis is flat, the first-filed rule should be applied.

### 2. *The Compelling Circumstances Exception.*

As the Eighth Circuit Court of Appeals has stated, the first-filed rule is not to be "mechanically" applied, *Boatmen's First Nat'l Bank*, 57 F.3d at 641; *Northwest Airlines*, 989 F.2d at 1005; *Orthmann*, 765 F.2d at 121, but should give way to "compelling circumstances" requiring a result different from that obtained by applying the rule. *See, e.g.*, *Midwest Motor Express*, 70 F.3d at 1017; *Boatmen's First Nat'l Bank*, 57 F.3d at 641; *Northwest Airlines*, 989 F.2d at 1005.

In *Brower*, the district court noted a number of further circumstances proffered as sufficiently compelling to overcome the first-filed rule. *Brower*, 865 F. Supp. at 569-73. Most of those circumstances fall generally within the so-called "red flags" identified by the Eighth Circuit Court of Appeals in *Northwest Airlines*. *Northwest Airlines*, 989 F.2d at 1007; *see also Boatmen's First Nat'l Bank*, 57 F.3d at 641 (identifying the *Northwest Airlines* "red flags"). Those "red flags" are: "first, that the 'first' suit was filed after the other party gave notice of its intention to sue; and, second, that the action was for declaratory judgment rather than for damages or equitable relief." *Boatmen's First Nat'l Bank*, 57 F.3d at 641 (citing *Northwest Airlines*, 989 F.2d at 1007).

Volvo did not file in North Carolina as a pretext to deprive Evans of its choice of forum in South Dakota. While Evans placed Volvo on notice, in mid-March, of a possible claim, Evans's notice included a self-imposed deadline of April 1 for such an action. Volvo did not race to the courthouse in an attempt to beat Evans. Instead, Volvo waited to see if Evans would file in South Dakota on April 1, or shortly thereafter.

When Evans did not file, Volvo decided to file the North Carolina action to protect Volvo's interest. Evans's notice to Volvo asserted that Volvo owed some continuing duty to Evans based on contracts that Evans either has or had with IR. Volvo's need to resolve that issue

7

is important because Volvo has not appointed anyone in South Dakota to take Evans's place; thus, South Dakota customers are left without representation.  For business reasons related to customer service, Volvo needs to resolve that issue quickly.  If Volvo has no duty to Evans under the IR contracts, then Volvo is free to appoint a dealer (and another dealer is free to accept the appointment) as a retailer of those products that Evans would have carried had it not refused to sign Volvo's contract.  Even though Volvo's North Carolina action was filed after notice from Evans, and seeks declaratory relief, there are no compelling circumstances that preclude application of the first-filed rule.

### III.     Conclusion.

For all of the reasons discussed in this Brief, Volvo respectfully requests that this Court enter an order transferring the venue of this action to the Western District of North Carolina.

Dated at Sioux Falls, South Dakota, this 16th day of May, 2008.

DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.


 /s/  *Mark F. Marshall*
Mark F. Marshall
206 West 14th Street – PO Box 1030
Sioux Falls, SD 57101-1030
Telephone:  (605) 336-2880
Facsimile:  (605) 335-3639
E-mail:  mmarshall@dehs.com

   and

David R. Jarrett (pro hac admission pending)
BAKER & HOSTETLER, L.L.P.
1000 Louisiana Street, Suite 2000
Houston, TX 77002-5009
Telephone:  (713) 646-1347
Facsimile:  (713) 751-1717
E-mail:  djarrett@bakerlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

Mark F. Marshall, one of the attorneys for Defendants, hereby certifies on this 16th day of May, 2008, I caused the following document(s):

- Brief in Support of Motion to Transfer Venue

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-mail notice of the electronic filing to the following:

>   Michael P. Healy
>   THE HEALY LAW FIRM, LLC
>   1100 Main Street, Suite 2600
>   Kansas City, MO 64105
>
>   *Attorneys for Plaintiff*

Dated:  16 May 2008               /s/ *Mark F. Marshall*
                                  Mark F. Marshall